IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SARA CRECCA, *as Guardian ad Litem*
*for M.K., a minor*,

        Plaintiff,

v.                                  1:25-cv-00369-JMR-SCY

QUEMADO INDEPENDENT SCHOOLS,

        Defendant.

**ORDER DENYING MOTION FOR DEFAULT JUDGMENT AS
A SANCTION FOR DEFENDANT'S SPOLIATION OF EVIDENCE**

THIS MATTER comes before the Court on Plaintiff's Motion for Default Judgment as a Sanction for Defendant's Spoliation of Evidence. Doc. 54. Defendant filed a response. Doc. 57. Plaintiff filed a reply. Doc. 59. Having reviewed the briefing and the relevant law, the motion is hereby DENIED.

**I.      Background**

On behalf of M.K., a minor, Plaintiff is suing the Quemado Independent Schools. Doc. 1-2. M.K. attended Quemado Elementary School during the 2021–22 school year. *Id.* at 2 ¶ 5. Plaintiff alleges that M.K. has autism for which he required specialized support in school. *Id.* ¶ 7. According to the Complaint, Quemado Independent Schools failed to follow M.K.'s Individualized Education Program ("IEP"). *Id.* ¶¶ 14–17. As a result, M.K. "went to the school bathroom without an escort and was sexually victimized," by another student. *Id.* ¶ 17.

In the subject motion, Plaintiff accuses Defendant of spoliation. Specifically, Plaintiff accuses Defendant of creating new evidence in response to receiving a notice of legal claims and Plaintiff's discovery requests. Plaintiff further accuses Defendant of coordinating witness testimony through a pre-deposition meeting.

Regarding the alleged creation of evidence, on January 11 and 14, 2022, Plaintiff "sent a notice of legal claims" to the Defendant. Doc. 54 at 2 ¶ 2. "In response to the notice, on January 18, 2022, Quemado Principal Cindy Orthman ('Principal Orthman') created a 'timeline' of events related to M.K.'s sexual assault." *Id.* ¶ 3. Plaintiff explains that "Principal Orthman did not create this timeline contemporaneously with initial reports about M.K. being sexually assaulted; the timeline was only prepared after correspondence from legal counsel." *Id.* ¶ 4. Also in January 2022, Principal Orthman asked "former Quemado teacher Joel Ahles . . to provide a written statement regarding M.K." *Id.* ¶ 6.

Later, on June 2, 2025, either Principal Orthman or Superintendent David Lackey asked teacher Andrea Olson "to create a written statement regarding M.K., long after the sexual assaults of M.K. had occurred." *Id.* at 3 ¶ 11. That same day, Defendant responded to Plaintiff's discovery requests including a copy of Teacher Olson's statement. *Id.* at ¶ 12.

As to alleged coordination of witness testimony, on September 4, 2025, Principal Orthman, Superintendent Lackey, Teacher Ahles, and Special Education Coordinator Jime Jo Albin attended a meeting. *Id.* at 5 at ¶ 22. During the meeting, the participants "reviewed 'Jime Jo Albin's 'Contact Log and Documentation . . .' and 'Mrs. Orthman's 'incident/overview document,' as well as texts, emails, specific information related to the case." Doc. 54 at 5 ¶ 25. "The purpose of the meeting was to review both timeline documents to refresh memories because the events had occurred four (4) years prior." Doc. 54-7 at 3. The electronic calendar invitation for the meeting was titled, "Review of timeline MK." Doc. 54-8. The meeting lasted about one-and-a-half hours. Doc. 54 at 5 ¶ 25. Defense counsel was not present at the meeting and did not know about it until after it occurred. Doc. 57 at 3.

The following week, on September 9, 2025, Principal Orthman was deposed. Doc. 54-3. Coordinator Albin was also deposed on September 9, 2025. Doc. 54-4. On September 10, 2025, Teacher Ahles was deposed. Doc. 54-5. Principal Orthman and Coordinator Albin relied on the two documents discussed at the September 4th meeting—Coordinator Albin's "Contact Log" and Principal Orthman's timeline of events—throughout their depositions. Doc. 54 at ¶¶ 26(a), (b). Teacher Ahles testified that he learned "[a] little bit" of information that he did not already know at the September 4th meeting. *Id.* at ¶¶ 26(c); Doc. 54-5 at 3 (11:19–21).

## II.    Plaintiff's Argument

Plaintiff argues that "Defendant's after-the-fact creation and coordination of evidence warrants severe sanctions, including default judgment." Doc. 54 at 8 (capitalization altered). Plaintiff asserts that, "[t]he sequence of events beginning in December 2021 and continuing through the September 2025 depositions demonstrates Defendant's tactics are not isolated lapses, but rather, a directed and continuous campaign to reshape this case's evidentiary record." *Id.*

Plaintiff elaborates:

> The record in this case shows that prior to the threat of litigation against Defendant, despite receiving a report of repeated sexual assault against M.K., Principal Orthman created no written findings, no investigative report, nor any other documentation required under district policies – policies she later admitted she was under obligation to follow. Indeed, it was only *after* receiving the notice of legal claims that she created a "written timeline;" a document she then used to supply the narrative to form the basis of her testimony and used in advance of the September 2025 depositions to coordinate Defendant's witness testimony.

*Id.* at 8–9. Plaintiff further argues:

> Strikingly, Principal Orthman's misconduct did not stop with the post-event creation of her timeline. After receiving the first legal notice, she solicited at least two teachers to create written statements regarding M.K. In early 2022, she asked Teacher Ahles to draft a narrative about events he had never contemporaneously documented. Then, years later, in June 2025, Principal Orthman or Superintendent Lackey asked another teacher, Teacher Andrea Olson ("Teacher Olson["]), to create a statement about M.K. long after the incidents had occurred. This

3

> solicitation was clearly in response to receipt of discovery requests from Plaintiff for statements regarding the allegations put forth in the complaint.

*Id.* at 9–10. Finally, Plaintiff asserts "Defendant's misconduct continued via the meeting to 'review M.K.'s timeline,' mere days before the depositions of Defendant's witnesses." *Id.* at 10. "[T]his was not a standard witness preparation session: it was a group meeting to harmonize testimony, including the use and review of after-the-fact created evidence." *Id.* at 10–11.

Plaintiff believes that the prejudice created by the Defendant is "astronomical." *Id.* at 11. "Plaintiff cannot cross-examine a record that did not exist when the events occurred, cannot test the accuracy of notes written years after the fact, and cannot reliably reconstruct what actually happened." *Id.* at 11–12.

## III.   Discussion

Plaintiff argues that "Defendant's after-the-fact creation and coordination of evidence warrants severe sanctions, including default judgment." Doc. 54 at 8 (capitalization altered). Defendant responds that the offending conduct does not justify "the ultimate sanction of a default judgment in Plaintiff's favor." Doc. 57 at 4. The Court agrees with the Defendant.

"[C]ourts have broad inherent power to sanction misconduct and abuse of the judicial process . . . which includes the power to enter a default judgment." *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015) (citations and quotations omitted). "[O]ur legal system strongly prefers to decide cases on their merits." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011). "The entry of default judgment [as a spoliation sanction] . . . require[s] a showing of bad faith." *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015) (citation omitted).

Tradionally, "[a] spoliation sanction is proper where: (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Jones v. Norton*, 809 F.3d 564,

580 (10th Cir. 2015) (citation omitted). The "meaningful alteration of evidence" can also be spoliation. *Van Winkle v. Rogers*, 82 F.4th 370, 374 (5th Cir. 2023) (citation omitted).

When a litigant fabricates evidence, dispositive sanctions can be an appropriate remedy. *Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009) (dismissal) (citing *Pope v. Federal Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990)). "Fabricating evidence and willfully providing false answers during discovery are without doubt abusive litigation practices that justify the sanction of dismissal with prejudice." *Kenno v. Colorado's Governor's Off. of Info. Tech.*, No. 19-CV-00165-MEH, 2021 WL 2682619, at *19 (D. Colo. June 30, 2021), *aff'd sub nom. Kenno v. Colorado Governor's Off. of Info. Tech.*, No. 21-1353, 2023 WL 2967692 (10th Cir. Apr. 17, 2023) (citing *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995)).

Before imposing default judgment as a sanction, however, the Court should consider the *Ehrenhaus* factors. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *Chavez-DeRemer v. Ascent Constr., Inc.*, No. 24-4072, 2025 WL 1638134, at *3 (10th Cir. June 10, 2025) (applying the *Ehrenhaus* factors to a default judgment). Those factors are: "(1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."  *Gripe v. City of Enid, Okl.*, 312 F.3d 1184, 1188 (10th Cir. 2002). "It is within a court's discretion to dismiss a case if, after considering all the relevant factors, it concludes that dismissal alone would satisfy the interests of justice." *Ehrenhaus*, 965 F.2d at 918. The same standards apply for granting default judgment. *See Chavez-DeRemer*, 2025 WL 1638134, at *3.

Here, Plaintiff fails to show that Defendant's actions were improper. *See Duprey v.*

5

*Twelfth Jud. Dist. Ct.*, 760 F. Supp. 2d 1180, 1226 (D.N.M. 2009) (declining to sanction party when there was "no indication of misconduct"). In making her argument, Plaintiff incorrectly conflates the "after-the-fact creation of evidence" with the fabrication of evidence. Specifically, Plaintiff alleges that Defendant has "repeatedly and methodically manufactured evidence to support [its] defense," but provides no factual support for her claim. *See* Doc. 59 at 2. Plaintiff insists that there was an apparent conspiracy to fabricate evidence but provides the Court with insufficient information to independently draw such a conclusion.

First, Plaintiff complains that Principal Orthman created a timeline of events after receiving a notice of tort claim. Yet, while there is no dispute that Principal Orthman created the timeline after the fact, there is no evidence that it was fabricated. There is also no indication that Principal Orthman behaved in bad faith. *See Jones*, 809 F.3d at 580. Plaintiff does not claim that the timeline is inaccurate. It is unclear whether there are even any discrepancies between Principal Orthman's timeline and Plaintiff's theory of the case. There are also no allegations that when it was disclosed in discovery, that Defendant attempted to pass off the timeline as if it was made contemporaneously with the Plaintiff's allegations. Doc. 57 at 2. It was certainly not misconduct for Principal Orthman to create notes for herself about this case, then openly provide those notes through the discovery process.

Second, Plaintiff complains that several witness statements were drafted well after the subject incidents. But, again, there is no indication that any of these witness statements contained false information or that these witnesses behaved in bad faith. *See Jones*, 809 F.3d at 580. Plaintiff has not explained how information contained in the statements contradicts Plaintiff's theory of the case. Defendant made no attempt to hide these statements and did not misrepresent when these witness statements were created. A witness is certainly not prohibited at any point in

6

time from writing a statement about an incident that occurred days, months, or even years prior. In fact, it seems axiomatic that, even if not contemporaneously made, a statement written closer in time to an event is likely to be more accurate than one made later.

Third, Plaintiff asserts that the witnesses impermissibly coordinated their testimony at the September 4th meeting. However, Plaintiff does not explain what, if any, false testimony was provided as a result of the September 4 meeting. Plaintiff only explains one instance where Plaintiff's theory of the case differs with the testimony. Plaintiff asserts—without citation to deposition testimony—that "Defendant's witnesses . . . insist in their coordinated testimony and fabricated statements that M.K. and the perpetrating student were always escorted to the restroom." Doc. 54 at 12. Whereas, "M.K. testified that school staff failed to escort him or the perpetrator child to the bathroom more than a handful of times, despite requirements set forth in M.K.'s IEP and instituted by Quemado in a Safety Plan." *Id.* In the deposition excerpts provided to the Court, none of the Defendant's witnesses "insist" that M.K. was always escorted into the restroom. *See* Docs. 54-3, 54-4, 54-5. Only Teacher Ahles was asked whether he escorted M.K. to the restroom. Doc. 54-5 at 5 (31:3–17). And Teacher Ahles testified that he would not do so himself, but the plan was to call an instructional aide. Far from insisting that M.K. was always escorted to the restroom, Teacher Ahles testified that he could not remember whether or not he had ever called an instructional aide to escort M.K. to the restroom. *Id.* Plaintiff further complains that the deponents relied on the documents discussed at the September 4th meeting during their deposition testimony. But the witnesses' reliance on these other documents during their depositions, without evidence that the documents were fabricated, is not improper. Given what is before it, the Court has no reason to believe that any of the witness testimony was fabricated as a result of the September 4th meeting.

None of the conduct Plaintiff complains of amounts to willful misconduct or bad faith. *See Jones*, 809 F.3d at 580. Defendant explains, and the Court agrees that:

> just prior to depositions, and due to inexperience with litigation, Defendant's employees met to go over the events from several years earlier. This was not done to deceive or mislead anyone. There is no evidence that any of the meeting attendees changed his or her testimony, or that there was any intent to change testimony. Nor is there evidence that "false answers" were given under oath as a result of this meeting.

Doc. 57 at 5. In an affidavit, Superintendent Lacky notes that "this lawsuit is the first time that the school district has been sued," since he became Superintendent in 2014. Doc. 57-1 at 1 ¶ 2–3. He also affirms that he was "unaware that holding [the September 4th] meeting regarding the lawsuit without Quemado Schools' legal counsel's knowledge or presence could be problematic." *Id.* at ¶ 6. He swears that the meeting was not held "in a deceitful or scheming manner." *Id.* at 2 ¶ 7. And, subject to potential objection, at trial, Plaintiff is certainly free to use the September 4 meeting and/or or the circumstances around the written statements in a robust cross examination to attempt to discredit and attack the Defendant's evidence.

Finally, Plaintiff relies on five cases to support her motion. *See Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009); *Archibeque v. Atchison, Topeka, Santa Fe Ry. Co.*, 70 F. 3d 1172 (10th Cir. 1995); *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992); *Volcan Grp., Inc. v. Omnipoint Commc'ns*, Inc., 552 F. App'x 644 (9th Cir. 2014); *Emuveyan v. Ewing*, No. 2:19-CV-00616-HCN-DAO, 2021 WL 3617423 (D. Utah Aug. 16, 2021), *clarified on denial of reconsideration*, No. 2:19-CV-00616, 2022 WL 22887659 (D. Utah Apr. 29, 2022). Yet, none of these cases hold that the after-the-fact creation of evidence is *per se* spoliation of evidence.

*Ehrenhaus* is the case oft cited for the legal standard for imposing dispositive sanctions. While relevant because it provides the factors this Court must consider when contemplating

dismissal, the case does not involve spoliation of evidence.

Plaintiff's other four cases each involved fabricated or falsified evidence. *Garcia* involved "an especially egregious case" of fabricated and forged documents. *See Garcia*, 569 F.3d at 1178–79. *Archibeque* involved a party who "willfully provided false and misleading answers on a continual basis during the discovery process." *Archibeque*, 70 F. 3d at 1173. *Volcan Group* also involved "falsified" documents, emails, financial reports, and project files. *Volcan Grp., Inc.*, 552 F. App'x at 645. But again, there is no indication that Defendant falsified any evidence here. Drafting a statement about an alleged incident after it occurs, whether on the witness's own volition or at the request of another, does not in and of itself make it fabricated or forged.  Plaintiff's cases are inapplicable to the current situation.

Plaintiff's phrase, "after-the fact-creation of evidence" seemingly comes from *Emuveyan*. 2021 WL 3617423, at *4. In *Emuveyan*, an employment discrimination case, the District of Utah held that "[a]fter-the-fact creation of evidence falls under the umbrella of spoliation." *Id.* However, in *Emuveyan*, the court was referring to new evidence created to mimic evidence made at the time of the incident. For example, the defendant's agent back-dated a note describing a material discussion to appear as if the note was written contemporaneously. *Id.* at *3–4. The court found that the defendant also altered dates and notes in plaintiff's disciplinary records and added incidents to the then-terminated plaintiff's disciplinary record after the lawsuit was filed. *Id*. at 7–8. The *Emuveyan* court did not hold that evidence created after an incident is inherently spoliation. Such evidence only amounts to spoliation if it is falsified or otherwise intended to mislead.

At this time, the Court has no reason to believe that the Defendant engaged in misconduct, sanctionable or otherwise. And because the Court finds that Defendant did not

engage in sanctionable misconduct, it is not necessary to reach the *Ehrenhaus* factors.

Plaintiff's Motion for Default Judgment as a Sanction for Defendant's Spoliation of Evidence (Doc. 54) is DENIED.

JENNIFER M. ROZZONI
United States Magistrate Judge
Presiding by Consent